The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oh yay, oh yay, oh yay. All persons having any manner of form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting. Godspeed to the United States and this Honorable Court. Good morning counsel. We're happy to have you with us and we're happy to hear argument in our first case, 2011 Wood v. Stirling. Ms. Franklin, best whenever you're ready. Good afternoon your honors and may it please the court. Everyone must concede that the majority of the state's case for death against John Wood consisted of inadmissible prison conditions evidence. The only question before this court and what the PCR court got wrong is what effect this evidence had on the jury. Here we had a jury that was in equipoise and the introduction of this inadmissible evidence and then use of this evidence in closing argument prejudiced the petitioner. Now the core error the PCR court made and which permeated its analysis of petitioners claim was that it treated this case as an overwhelming case for the death penalty. In so doing it committed a number of legal errors that rendered its adjudication unreasonable. So for example the PCR court found petitioners prior prison record to be aggravating without recognizing that he had been safely housed during that prior federal incarceration. The court discounted the mitigation the mitigating impact of that prison adaptability evidence. Also the court improperly discounted petitioners mental health mitigation evidence when it found that evidence was in quote without findings of psychosis or delusion at the time of the offense. This violates Tenard versus Dredge. The PCR court's order was signed three years after Tenard was decided. The court unreasonably found that as to conditions of confinement evidence that the defense was able to quote Franklin Bess I'm sorry Judge Diaz here can I take you back just to what you said earlier that it violated a case that you cited whose name I've already forgotten. So what what was the what's the upshot of that case what do you say that the PCR court got wrong? So Tenard v. Dredge is the case that I just quoted and that was the case out of I believe it was Arizona where they held that the mitigating evidence wasn't relevant unless it actually went to kind of circumstances of the crime. So I mean if you could show that. Well can I so I don't think the PCR court said it just sort of was to my mind anyway commenting on the strength of the evidence given the rebuttal evidence the expert rebuttal evidence that have been presented by the by the state. Do you see it differently? I do your honor I mean you know he seemed to make sort of an explicit finding that unless there had been psychosis or delusion at the time of the offense that that mental health evidence was not particularly mitigating. I mean so he discounted it in a way. In the point of that the particularly mitigating point that you know he's entitled you can't ignore it under Tenard but it seems to me that the court can say it's less persuasive right? Well but he didn't do that. I mean what he sort of found was that there needed to be this you know this direct kind of claim that he found it to be less powerful because of that. And in fact he didn't mention throughout the order any of the other kind of additional mental health evidence that had been presented on Mr. Woods behalf. You know Mr. Wood put up a case that was highly dependent on this middle mental health mitigation evidence. And you know the the jury for example asked to rehear that during its deliberations. And that is just an aspect of the case that the judge here just completely ignored, discounted. And so do you say that he used both words and maybe maybe it doesn't matter in your mind but do you contend that he ignored it or that he discounted it? Well I mean I believe he did a little bit of both. I mean he discounted it by sort of referring to it in this very limited way. Finding that you know the psychosis or the delusions did not have anything directly related to the offense. You know the the offense of conviction. But there was much more that the court should have considered in this case. Counsel do you have other arguments? I do your honor. The court unreasonably found as to the conditions of confinement evidence that the defense was able to quote score as many points if not more than the prosecution. This finding is not at all supported by the record. A fair reading of the record is that the state elicited evidence to show that a life sentence would simply be a change of address for the petitioner. And that he would have canteen and movies, books and magazines, and work and educational opportunities. Life in prison just wasn't going to be an appropriate punishment for the petitioner. This evidence didn't benefit John Wood. And the statement again sort of highlights the unreasonableness of the judge's order in this case. I mean prison adaptability evidence is clearly admissible and mitigating evidence under a long line of cases. Skipper v. South Carolina, Lockett and Eddings. But the prison conditions evidence is inadmissible under established South Carolina law. That was true at the time of this crime or at this trial excuse me and it remains true today. Now here's how we know that the jury was an equite voice. They deliberated over a three-day period. They received an Allen charge from the mental health testimony. So Ms. Franklin-Best, with respect to that, you just made the point that I was going to make and you made it earlier. That there was apparently some interest in the jury in understanding the nature of the mental health evidence. At least we can surmise that. It's hard to know exactly what a jury is thinking but that would seem to make some sense here. So how does that seems to cut against the notion that somehow this conditions of confinement evidence was central to the prosecution's case. So how do you respond to that? I'm sorry Judge Diaz, I don't think I quite understand the question. Well the question is you're making the argument that the conditions of confinement evidence essentially just overwhelmed the case in mitigation and was a central component of the state's case. And part of that, I guess, the argument you're making is that this was a close case because of the fact that the jury focused on this mental health evidence. But if it was close it wasn't because of the conditions of confinement or at least the argument is it was because of something else that was relevant to the jury and that this really wasn't an important part of the prosecution's case. Do you see my point or question? Question or a statement. But well I think I do your honor and let me just mention this really quickly because I do not see the timer up on my screen. You've got seven minutes. So somebody may just sort of need to tell me. But I mean so so this prison conditions evidence constituted I mean it just was the case for death in this case. I mean they it was about 55 percent. Is that really fair? I mean it may I mean there was a pretty compelling case in our aggravation related to the circumstances of the offense. The victim's wife testified. The other officer who was injured and shot testified. There were other witnesses, eyewitnesses who testified. So I don't think it's really fair to say that the conditions of confinement evidence was sort of the be all and end all of this case. Is it? I believe it was your honor. I think a fair reading of the record when you look at the arguments I mean the the introduction of that evidence from Sly who was the state's witness that they brought in. This is the same witness that they brought in in Burkhart which is the South Carolina case that got reversed based on this testimony. It did because it constituted just sort of the heart of their case. I mean they had a couple of other witnesses who testified to sort of specific facts of the crime. You did have the widow who also testified as well. But the case and they brought it home during the closing argument when they you know argued that if you give John Wood a life sentence it's going to be nothing more than a change of address for him. I mean this just was their argument for death. So I get that disagreement. Can I go back to Judge Diaz's original question which was a question I had too and I'm not sure you've answered. You spend a lot of time talking to us which is a fair thing for you to do about three days that the jury took and how it seemed to be so disturbed but then you immediately went into they asked questions about mental health. So are we to take from that the logical conclusion that what they were disturbed with was the mental health disease and what that would do for the defense or do you make some argument that we should also be considering that in figuring out whether they were disturbed about the conditions evidence. Do you believe they go hand-in-hand and so why? I mean I you know you're right I mean I do I mean I think when I mean well okay you do now what. Well what Strickland requires you know is that the court consider just you know conduct a fulsome objective inquiry into the entire record to assess prejudice in a particular case. Right you're not misunderstanding me. We talk we look about these days and we look about the jury being undecided and you brought up the question that they kept worrying about mental illness or the mental illness testimony and what I'm asking you is do you think that that's any indication that they were worried about the prison conditions evidence? The three days they took the inquiry? I mean and I guess I just need you to sort of under I guess I'm having some difficulty just quite understanding the question and so I apologize. Okay okay let me just start it's back I'll ask a backup question. So you have an argument about conditions right and the improper argument and that it wasn't brought on by, can you not hear me? I'm having difficulty hearing you your occasionally it gets muffled and it may be the storm here we having a big storm. You're good now. Okay okay all right I'll try to stay in this particular position. Okay so I'm focusing just on the conditions. Okay. Your claim that the conditions testimony was improper and I have thought that maybe I have misunderstood what your argument then up to this that the fact that the jury seemed so deadlocked was helpful to you in making that argument but in your argument here I thought you tied the jury's length of time and considering the issue only to the mental health problem. So what's what's what's your argument? Well I mean I think that the you know the jury was interested in his mental in the mitigation that you know that counsel gave to them which was you know this this mental health evidence and so I think you know that being the case when you infect the trial with this prison conditions evidence that is arbitrary that is irrelevant it tips the scale in favor of a death sentence. I mean so it undermined the the jury's consideration of that mitigation mitigating evidence. So that's the relationship between the two your honor. All right. So you know Strickland requires the court to conduct as I said a fulsome objective inquiry into the record to determine prejudice in a particular case. The court is obligated to assess errors to the extent that the record permits to determine prejudice and a court cannot just ignore evidence that strongly suggests that the errors impacted the jury's verdict. And here your honors the PCR court did just that. By beginning with the assumption that this was an overwhelming case for death the PCR court's analysis did not properly assess the aggravation and mitigation offered in this case. It failed to conduct a searching inquiry into the record to determine the harm caused by the introduction of the improper prison conditions evidence. The court's adjudication was unreasonable. Fair-minded jurors could not disagree it was unreasonable and petitioner respectfully asked this court to grant relief. And I do not see how much time I have your honors. You have about a minute. Okay. I would reserve a rebuttal if you wish. I would like to reserve that if I Thank you. Ms. Brown. Thank you. Good afternoon may it please the court. Melody Brown for the respondents in this matter. This is a 2254 case appeal and this court has already narrowed the focus of the appeal to one issue an ineffective assistance of counsel claim regarding the prison conditions as we heard a few moments ago. But I would suggest that it can be narrowed down even further and that is that the inquiry the true inquiry before this court was reasonable. Was it a reasonable application of law? Was it a reasonable application of the law to the facts of that case as the facts appear before the PCR court? And we suggest absolutely that this is a reasonable application of the Strickland prejudice standard. Now as which directly to prejudice because the order is quite clear from the state court but not a basis for the conclusion that there's sufficient performance. So we go straight prejudice. And Strickland of course controls. I don't believe that there's been a question that Strickland controls. Now there's been some suggestion that Burkhart and even 16325 would indicate sort of overwhelming prejudice unassumed or presumed prejudice when condition evidence comes in. And that is not a correct statement of state law. And the the state law issue now that's clarifying is the Bowman v. Say case from 2018. That clearly state counsel just just to help me understand why why this argument matters. In the question of whether there's federal whether there's a federal constitutional violation don't we look the federal prejudice under Strickland? And so even if state law had some some provision in it we can't grant relief based on a state law ruling right? We only grant relief based on federal constitutional rules and that requires us to apply Strickland right? Absolutely correct your court looked at which includes some of the 2018 cases that I had referenced in the brief shows that the court did not simply skate over this. It shows a reasonable consideration of all the elements and facts before before making that decision. The ultimate decision of course is prejudice under Strickland. You're absolutely correct. But I do show I think it shows that the court considered this. And the order also reflects that the court very carefully considered all of the other evidence in making the prejudice analysis as Judge Richardson pointed out under Strickland which is controlling. And he took every element and considered it. Considered the elements in aggravation, considered the mitigation case, considered victim impact evidence. And I believe there was a discounted mental health. But if the court would take notice of the exact wording in the PCR court's order the PCR court says mild evidence which is a qualifier which means it's not discounted. It wasn't cast aside. It was not given much weight. And again under Strickland prejudice analysis is the balancing by the reviewing court. In this case the PCR court. And he took all of that evidence and considered whether there was a reasonable probability of a different result. Now the the type of evaluation was very complete and the rule was Strickland which was properly applied. That's a reasonable application of federal law to the facts of the case. And we need to go no further than that. But and this is... Ms. Brown can I ask a question about part of the order that has to do with the PCR court's analysis of prison adaptability evidence and conditions of confinement. Excuse me. The question I have is whether or not the PCR court made a correct distinction because the court seemed to suggest that part of the defense's calculus and whether or not to allow the conditions of confinement evidence in was the possibility that if they didn't, if they didn't do that, that somehow the evidence of adaptability to prison wouldn't come in. And of course well you could tell me but what your position is but I think that there's a distinction between the two. One is clearly admissible. The other one is not. And I wonder if the PCR court lost focus with respect to that issue. I think two things tell us that it did not lose focus. One is that this is not and within prejudice itself you're looking at the impact that that evidence would have had on the totality of the circumstances and particularly the impact on the jury's deliberations. So taking the fact that it is in the prejudice analysis itself, this is not a determination of whether it should come in. This is a determination of how it impacted the proceedings which is exactly where it should be. Now I agree with you there is a distinction but I would further submit that distinction is difficult to draw sometimes and I think it's also very important to remember that the judge was looking at the context of the entire case. This means state and mitigation presented by the defendant and the defendant was going to present some portion of conditions through their own witness, James Aiken. Because if the court will review in detail that particular passage of James Aiken's testimony, he does talk about classification and adaptability, that sort of thing, but then he goes on to describe the cell, the living conditions, and even says at one point we can control them. And defense counsel echoes that in his closing saying they have the ability to control him. So that line is blurry. Right, but isn't that all in response to the initial introduction of the evidence? I mean at that point they have to have to make the best case they can make and the best case is trying to rebut what should have been an admissible evidence to begin with. Well I would turn back to what the BCR court resolved after looking at both the trial record, contemporaneous trial record, and what BCR counsel testified to in the collateral proceeding. First of all, the trial court record shows that this was not a surprise, but in fact the state said this is the witness I'm going to present and this is the reason I'm presenting him for the conditions. And counsel went back to co-counsel. They had a huddle together moment, talked about it, and then said we have no objections and said specifically to the conditions evidence coming in. Counsel, does it matter, in the context of Judge Diaz's question, does it matter that the defense counsel argued in the opening statement that the the miserable imprisoned life is worse, more punishing than death? I think that is more evidence. Help me understand what I, so I I'm having a little hard time to understand exactly what I do with that. It seems relevant but I can't figure exactly where that fits in the analysis. It might fit where Judge Diaz has asked but I'm not totally sure of that. What do you, help me understand from an analysis perspective, not a 30,000 foot gut feel reaction, but within the the Strickland analysis that we're looking at, how that the fact that the defense raised this initially in the opening statement that the miserable imprisoned life is worse than death, how that plays into our legal analysis? I think there are two ways to look at it. First is to look at an interpretation of what actually happened at trial. Now the solicitor mentioned that defense counsel made that argument and also mentioned that there was movement with the life without parole instructions and also Wadir as a basis for offering the the testimony. So that the opening statement was mentioned in that respect and then counsel after that says oh I'm not going to object to the condition. So what you have is sort of a pattern that this was intending to, that defense was intending to have this come in all along through James Aiken. Wouldn't have made the statement, opening statement, if there wasn't going to be some evidence presented. I think that's a fair assessment of the record. I think that contemporaneous record is very influential with the PCR court's decision that they thought that they could have an advantage in cross examining Mr. Slott. That's part of the... But is that only, and I guess this is maybe the part, and I don't want to take up too much time on this, but so all of that seems to go to the performance piece, which we're not really addressing here, right? I mean one might decide, one might have decided I guess in the PCR context, this was a strategic decision to let all this in and so it was not an effective assistance performance wise. But that's not what we're addressing, right? And so what I'm trying to understand is what what did we do with this piece, the government, the defense's initial introduction of how bad prison is going to be as a mitigator, just pure prison conditions, right? The miserable imprisoned life, how that plays into prejudice. And I thought you were going to talk about this is the the PCR point about, you know, which side scored more points, right? And so it's sort of that this is evidence that suggests that maybe the defense, at least ex-ante, believed that they were going to score more points than they were going to lose. And that's some evidence that supports the PCR's ultimate conclusion. Yes, sir, it does flow into that and I think you're absolutely right. It can go to the second prong, however, part of that is did the, was the defense really surprised? So might I suggest looking at it from the view of they were already going to introduce evidence and that's the type of context the PCR court was looking at when it resolved counsel apparently believed they could score more points on this issue. That's the part of the decision to object. It also flows into whether this was some kind of constitutional violation because the defendant didn't have the ability or the process to this evidence. It was not a shock and that kind of figures into it. So I agree with your honor, it could go to both prongs. I think in this case it shows the continuity of strategy that even we didn't get that from defense counsel. Defense counsel essentially told us he could not remember why he did what he did, but his conclusion that it was error was based on cases that came out far after that. But we also don't have to go... Excuse me counsel, you don't, you don't assert that it was an error for this evidence to come in, do you? We do not contest the first prong. It was sufficient and I don't think we have to look far to make that determination. We can follow this court's ruling in Sigman versus Sterling. This is almost the exact same issue. So we already have a roadmap of exactly where to go with this. Was Plath out there? Yes. Was that considered not to be admissible? Yes. But keep in mind too that the trial judge in this trial actually did find it was admissible. So there was a ruling on admissibility and that was not challenged by defense counsel either. Plath was there, defense counsel could have challenged. But we're not saying general prison conditions should be admissible. I don't think that anybody has argued that nor should they based on the way that South Carolina law reads. Now the problem is, is that prohibition, does that mean that there's some kind of inherent heavy prejudice with it? No. And that's where we look at the context of what happened. And it's rather interesting. Ms. Brown and does that, does that context include the point that your colleague on the other side made about how this seemed to be, at least in her view, the principal focus of the of the state's case? I think the brief mentions that the state spent 27, if she didn't mention it, I think the record would support the notion that there were 27 transcript pages about questions regarding prison conditions and made up more than half of the testimony, etc. And that the prosecutor focused a good bit of his argument, the solicitor, in closing on this this very topic. And it's difficult to gauge, obviously. It's hard to figure out exactly what gets a jury's attention. But that is concerning, isn't it? That, I mean, he sort of likened prison conditions to spending time in a mini-city with restaurants. And he made it sound like it was just a paradise. And it clearly is supposed to weigh all that. Well, I think that the PCR court's order shows us that he went into all the evidence again. I think to look at only what was presented officially cuts off half of the case. At the very beginning of the penalty phase, the solicitor moved in all the evidence from the first phase. So everything that individualized testimony on the crime itself and how Mr. Wood acted during all of the offenses and all of the danger and the injury that he inflicted, all of that came in. And we see in the PCR court's order how he went back and looked at that. A wild chase, the wounding another officer, running civilians off the road, commandeering a truck at gunpoint, gunfire, endangering other officers and civilians. And then he goes on to look at victim impact, which was only in the penalty phase. And then, of course, the mitigation where he weighed the mitigation as well. So all of that is together. It can't be separate. Maybe, but aren't we looking at, we just have a challenge to the penalty phase, right? But that thing, but it's a different jury. Is it not? Maybe I'm mistaken. It is not. It is not. It's a fact. So the jury's heard that evidence and now it moves to the penalty phase where I don't think it's muted that the bulk of the state's case in the penalty phase was improperly admitted, improperly given by the state. Do you dispute that? I do not dispute that it was in hindsight improperly admitted at the time. Well, is that the law that we are to apply? Well, the ruling from the trial judge was it was relevant. So we do have that. I do not think it should have been a relevancy ruling based on our later cases in the clarification. And if it's tried today, Your Honor, certainly it would be found inadmissible. Well, what rule applies to our review of it? Is it admissible or inadmissible as we look at it? The only thing that applies to the Strickland test was its deficiency and prejudice. Okay. And the way that we would look at prejudice is it's a subjective consideration. And that brings me to my last... Is that evidence admissible or inadmissible as we sit here today? In your evaluation, it would be considered as extracted and it was reweighed. It was inadmissible. In the prejudice... It was error to admit. Okay. Yes. I believe we would be on the same page with that, Your Honor. And as far as the jury determination, I think that some courts have looked to jury deliberations. I believe it was Judge Diaz that mentioned that there were notes that came out and mental health evidence portions of the testimony from several witnesses were replayed. But at the end of the day, a Strickland prejudice analysis is an objective analysis of the evidence and what a particular jury did and what a particular jury found important or not important. First of all, almost impossible to know, but it's not evidence in the case either. So, it would actually be contrary to Strickland, and this is what the district court found, would be contrary to Strickland to try to, first of all, say that that's evidence that goes into a Strickland analysis and certainly to try to guess what it means. Well, last year we did exactly that. We did consider the delay that the jury... The length of time that their jury spent and it was less than the time here. And we considered that and ruled for the defendant. So, I'm just not... I don't think I track all of your arguments. Well, I think maybe I do understand where you're coming from, Your Honor, and that is you can consider it and judges have considered it before. It's not that that's never been considered before, but under AEDPA, it's an unreasonable application of federal law as interpreted by the Supreme Court. Why don't you look at Williams versus Sterling, see what you think about that. But there's nothing that shows under a Strickland analysis that it must be done. And that's where the district court found that little bit of a difference. Well, we found an error when it wasn't, when that fact... In considering that there was... We were giving relief. We considered the fact that the jury had been deadlocked for two days. And the jury can be deadlocked and they could consider it, but a judge looking objectively at the evidence may not find that it's that close. And that's the difference. And since we're under Strickland, it was an appropriate evaluation. I see that I'm almost out of time. May I answer any other questions from the court? Thank you very much. I appreciate your time. Thank you. Ms. Frankenbest. May it please the court. I mean, right. I mean, the critical question in this case is whether or not the PCR court accurately assessed prejudice. And when you look at this order, I don't believe there can be any question. Is it accurately or unreasonably? Well, unreasonably, your honor, would be the standard. Yes, your honor. Because I don't say that just to trip you up because it could be the case that we, a judge, could think that if he or she would have been in that position, they might've ruled differently. But that isn't the test, as I understand it. We have to... I mean, we can't just indulge our predilections. So I just want to be clear about what the standard is. Well, to be... And I apologize for a clear language. I mean, it was. It was subjectively unreasonable. And we know that by looking at the order. We know that the judge really sort of, on a very deep level, conflated the evidence of prison adaptability and the conditions of confinement. And when you look at the language that he uses, he talks about how James Aiken, which was there for purposes of showing prison adaptability, how in many respects he traveled down the same road as Mr. Sly. I mean, he didn't. And as your honor pointed out earlier, I mean, there was a little bit of response to the improper evidence that was interjected by the state. But the evidence is completely analytically different. I mean, the prison adaptability evidence is clearly admissible. It's clearly mitigating. And the prison conditions evidence clearly is not, and was not at the time, remains the case today. So looking... Counsel, counsel, can you address the defense's argument in the opening in this line about, you know, where... I don't... I seem to have lost it. But where they said that, in essence, the horrible prison conditions is worse than death, is that conditions of confinement? Is that a conditions of confinement argument that was made in the opening? I mean, I believe that the judge, or sorry, counsel in this case, when he started off his opening argument for the penalty phase, made a reference to, you know, here we are, we're going to talk about penalty, which is going to be either life in prison or it's going to be a death sentence. Now, by saying that, he did not invite the state to then, you know, introduce this enormous case for... But he didn't say that there's two options, right? I mean, what he said is the miserable imprisoned life is more punishing than death, right? I mean, that's making a value judgment that is talking about the relative impact of death penalty. I mean, that suggested there are two options. I mean, that seems to misstate what was actually said. And if you want to, you know, not answer, it's fine. But what I'm trying to understand is, given what was said, what impact that has? And I think ignoring it doesn't help answer that question. Well, I'm not ignoring it, Your Honor. I mean, what he said was a far cry from the idea that there were going to be a restaurant in prison, there were going to be movies, there were going to be books and magazines, there were going to be children sitting on this lap. Counsel, I think everybody would agree with that. I had read that earlier statement as they're both terrible. And it's sort of like, you're going to get one or the other, right? So it wasn't entirely inconsistent with the much more fully developed argument about what prison conditions were. And that's correct, Your Honor. And at the end of the day, I mean, the PCR court did find that the introduction of that evidence wasn't admissible. It was deficient performance on the part of counsel. So, I mean, that's where that issue ends up. Yes, but we're talking prejudice here, right? Yes. And then you go back to my colleague's question. Well, was it so prejudicial if defense counsel said this? And that's what I think we wanted you to answer. Well, and I believe that sort of those very limited statements at the beginning of the penalty phase were not prejudicial to the extent that the state's fulsome case on prison conditions in attempting to seek a death penalty, how prejudicial that was. And I feel like I've left you. But I do want to say, I mean, in assessing prejudice in this case, you know, it's not impossible to do in this case. I mean, when you look at the actions of the jury, when you look at the fact that they received an Allen charge, that there were three days deliberations. Are you making the argument that one of the reasons that the jury took so long and had so much difficulty was because of the evidence that you're arguing about now, the prison conditions evidence? Or is it because of the mental health evidence? I believe that a fair reading of this record, Your Honor, shows that they were concerned about, I mean, they were carefully considering the mitigation case that trial counsel put up. And with the introduction of this improper evidence, that swayed them to disregard the mitigating evidence and to impose a death sentence. And I know that's your argument, but where do we find that? What support do we find in what the jury asked for that? Because I thought you earlier said that this was all the questions were all about. Can you not hear me again? I'm having difficulty. I'm sorry. I thought the earlier response to us was the questions were all about mental health from the jury. And I believe that they wanted to know about, I think they were that being the case, the introduction of this highly improper evidence moved them to a death sentence. Whereas in the absence of that evidence, they most probably would have come back with a life sentence. And I do not see a clock. I just, again, you're over time, but I'll ask my colleagues if they have any questions. You're two minutes over. Oh, I'm sorry, Your Honors. All right. I don't hear any questions. So do you want to conclude in about a minute? I would just respectfully ask this court, Your Honor, to consider our arguments and define prejudice in this case and to grant John Wood relief, a new penalty phase. Counsel, we appreciate your arguments. I think we have no further questions. Thank you very much.
judges: Diana Gribbon Motz, Albert Diaz, Julius N. Richardson